UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL LIEBERMAN,<br>*Defendant*,<br><br>--------------------------------------------<br>DALANA LIEBERMAN,<br>*Interested Party.* | 3:15-CR-00161-PGS-TJB<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Government's Motion for Partial Summary Judgment. (ECF No. 130). Oral argument was held on November 8, 2023. The parties represent that the ancillary hearing scheduled for January 2024 will be simplified by a decision on the following question: whether Petitioner Dalana Lieberman's tenancy status with respect to Huntersville, North Carolina Property (the "Subject Property") defeats the Government's forfeiture claim as a matter of law.

In support of its motion, the Government presents two arguments: first, that Petitioner Dalana Lieberman ("Ms. Lieberman") is not a tenant by the entirety in the Subject Property and that—even if she were—this tenancy status would not defeat the interest of the United States where the Subject Property was purchased with proceeds of a crime within the meaning 21 U.S.C. § 853. (ECF No. 130 at 2). Ms.

1

Lieberman, on the other hand, contends that only the culpable spouse's—her husband at the time, Defendant Michael Lieberman's—interest in the Subject Property is subject to forfeiture. Ms. Lieberman argues that the Government is not entitled to forfeit her interest and foreclose and sell her interest in the Subject Property seeing as the property of an "innocent third-party is not subject to forfeiture" and would run "afoul of [Ms. Lieberman's] rights as a tenant by the entireties." (ECF No. 135 at 2, 3).

For the reasons below, the Court cannot grant summary judgment on Ms. Lieberman's tenancy status based upon the facts before it. However, the Court finds that—regardless as to Ms. Lieberman's current tenancy status in the Subject Property—this status does not protect the Subject Property from forfeiture per se where that property may have been acquired with proceeds of a criminal act within the meaning of 21 U.S.C. § 853.

## I.

At all times relevant to the pending matter, Petitioner Dalana Lieberman ("Ms. Lieberman" or "Petitioner") was married to the Defendant, Michael Lieberman ("Defendant"). Ms. Lieberman was not involved in the criminal activity underlying the Defendant's conviction. (ECF No. 113 at ¶ 17). Whether Defendant and Ms. Lieberman are currently married is unclear to the Court on the facts before it.

From in or about 2003 to in or about June or July of 2014, Ms. Lieberman and

Defendant lived at a home in West Orange, New Jersey (the "West Orange Property"). (*Id*. at ¶¶ 13-14). Defendant purchased the West Orange Property on or about November 4, 2003. (ECF No. 113 at ¶ 14).

As is relevant to this proceeding, Defendant and Ms. Lieberman's reported financial earnings for 2006-2014 are summarized below:

- In February 2009, the Social Security Administration ("SSA") notified Ms. Lieberman that she was entitled to monthly Social Security disability payments as of January 19, 2006. (*Id.* at ¶ 4)

- In February 2009, SSA would make a $35,953 lump sum payment to Ms. Lieberman for the period from July 2006 through January 2009. (*Id.*)

- According to SSA, Ms. Lieberman's monthly payments of $1,334 began in February 2009. (*Id*.).

- In 2011, Defendant earned $79,574 in wages, salaries, and tips. (*Id*. at ¶ 5).

- In 2012, Defendant earned $82,513 in wages, salaries, and tips. (*Id*. at ¶ 6).

- In 2013, Defendant earned $77,245 in wages, salaries, and tips. (*Id*. at ¶ 7).

- In 2013, Ms. Lieberman received $18,083 in Social Security

>    Benefits.  (*Id*. at ¶ 8).
>
> - In 2014, Defendant earned $64,846 in wages, salaries, and tips. (*Id*. at ¶ 9).
> - In 2014, Ms. Lieberman received $18,359 in Social Security Benefits.  (*Id*. at ¶ 10).

During this time—specifically between June 2012 and May 2014—Defendant unlawfully diverted $1,640,822.69 from his employer, Crédit Agricole Securities ("CAS"), which Defendant transferred to bank accounts for his own use and benefit. (ECF No. 113 at ¶ 15).

The purchase of a home in Huntersville, North Carolina (the "Subject Property") occurred on June 25, 2014.  (ECF No. 113 at ¶ 11).  The purchase occurred when—by deed dated June 25, 2014—Defendant and Ms. Lieberman acquired title to Subject Property as tenants by the entirety under North Carolina law. (*Id.*).  This occurred after the Defendant had begun unlawfully diverting funds from CAS.

The purchase price of the Subject Property was $438,000.  (*Id.* at ¶ 12).  The purchase was made by check or wire transfer and was not financed with a mortgage or loan.  (*Id.*).  Where that $438,000 was acquired is under dispute and will be addressed at the ancillary hearing.

On or about August 22, 2014—approximately two months after the purchase

of the Subject Property—Defendant and Petitioner sold the West Orange Property at a loss, receiving no proceeds from the sale. (*Id*. at ¶ 14).

Approximately five months after the purchase of the Subject Property on November 14, 2014, the Government filed a Notice of Lis Pendens against the Subject Property. (ECF No. 135 at 5).

On April 15, 2015, pursuant to a plea agreement with the United States, Defendant pled guilty to a one-count Information charging him with wire fraud in violation of 18 U.S.C. § 1343. (ECF No. 113 at ¶ 14). The charge was based on the Defendant's unlawful diversion of $1,640,822.69 from his employer CAS, which the Defendant transferred to bank accounts for his own use and benefit. (*Id.*). As part of his plea agreement, Defendant agreed to the forfeiture of the proceeds of his crime in the amount of $1,541,565. (ECF No. 14 at 2). Defendant also agreed to forfeit his interest in the Subject Property. In relevant part, Defendant's plea agreement states that he agreed to forfeit to the United States "all the [D]efendant's right, title and interest in the real property and appurtenances known as [Subject Property] . . . which the [D]efendant admits has the requisite nexus to the offense to which the [D]efendant has agreed to plead guilty." (ECF No. 14 at 4).

On September 18, 2015, the Court entered judgment sentencing Michael Lieberman to thirty-seven months of imprisonment followed by two years of supervised release. (ECF No. 19).

The following events—notably Defendant's quitclaiming of his interest in the Subject Property—occurred after Defendant's guilty plea. On December 23, 2015, Defendant conveyed to Ms. Lieberman all his interest in the Subject Property. The transfer was made by Quitclaim Deed recorded in the Register of Deeds for Mecklenburg County, North Carolina. (ECF No. 130-1 at Ex. C. ¶ 1; ECF No. 130-1 at Att. 1). A notice of forfeiture was filed on April 17, 2017. (ECF No. 23). Ms. Lieberman filed her Petition for Ancillary Relief on April 26, 2017. (ECF No. 27).

Since the Subject Property's acquisition and to the present time, Ms. Lieberman has used her personal, untainted funds to pay for upkeep, maintenance, and upgrades to the Subject Property. However, the Government does not concede that all the expenses formerly mentioned were paid for by Ms. Lieberman's personal untainted assets. (ECF No. 130-1 at ¶ 19). Additionally, Ms. Lieberman contends that she contributed funds from her lump-sum disability benefits that she received from SSA to the purchase of the Subject Property. (ECF No. 135 at 3). At the present time, Ms. Lieberman lives at the Subject Property with her children. (ECF No. 114).

Ms. Lieberman argues she is a tenant by the entirety and therefore the Government cannot forfeit on her interest in the Subject Property, only that of her husband. The Government argues that it has superior rights to the Subject Property because its interest vested at the time the Defendant committed wire fraud and Ms.

Lieberman did not have a preexisting interest in the Subject Property when the crime giving rise to the forfeiture took place.

The Government moves for Summary Judgment on the issue of Ms. Lieberman's tenancy status and the effect of this tenancy status on her Petition.

## II.

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), *amended by*, 979 F.3d 192 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id*. "The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party." *Id*. (quoting *Anderson*, 477 U.S. at 255). Moreover, summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial,

no reasonable jury could find for the non-moving party." *Wasserman v. Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (internal marks omitted). Where the moving party bears the burden of proof, the evidence presented in support of summary judgment must be "credible" and "entitled to a directed verdict if not controverted at trial." *Id.* at 237. "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *Id.* at 238.

### III.

The question before the Court is whether Ms. Lieberman's tenancy status, as a matter of law, bars the Government's asserted ownership interest in the Subject Property. Although Ms. Lieberman's tenancy status at the present time is unclear to the Court based upon the facts before it—thereby making summary judgment on that question inappropriate—the Court finds that Ms. Lieberman's tenancy status does not, as a matter of law, prevent the Government from forfeiting the Subject Property given the clear directives set forth within 21 U.S.C. § 853(n) for a petitioner to prevail at an ancillary hearing.

To prevail in an ancillary proceeding and have the court amend an order of forfeiture, a petitioner must show that either she (1) has an interest in the forfeited property that was vested or superior at the time of the crime or (2) was a bona fide

purchaser for value. 21 U.S.C. § 853(n)(6). Specifically, 21 U.S.C. § 853(n)(6) states:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>> the court shall amend the order of forfeiture in accordance with its determination.

Overall, the language in 21 U.S.C. § 853 makes clear that the Government "can forfeit and go after criminal earnings wherever they may be stashed—even in the hands of third parties." *United States v. Hallinan*, 75 F.4th 148, 150 (3d Cir. 2023). And, although criminal defendants possess "myriad procedural rights, those rights do not transfer to whoever may be holding the tainted property," and only "'innocent' third parties can hang on to [a] property" purchased by proceeds. *Id.*

This in mind, the Court first addresses the threshold question of Ms. Lieberman's tenancy status when the Subject Property was acquired on June 25, 2014. Under North Carolina Law, when land is devised to a husband and wife, "they take the estate so conveyed or devised, as tenants by the entirety, and not as joint

9

tenants, or tenants in common." *Davis v. Bass*, 124 S.E. 566, 567 (N.C. 1924) (internal citations omitted). This life estate "takes its origin from the common law . . . . The estate rests upon the doctrine of the unity of person, and upon the death of one the whole belongs to the other, not solely by right of survivorship, but also by virtue of the grant which vested the entire estate in each grantee." *Id.* To create the tenancy by the entirety, the five unities must be present: the unity of time; the unity of title; the unity of interest; the unity of possession; and the unity of person. 1 WEBSTER'S REAL ESTATE L. IN N.C. § 7.04 (Lexis 2023). Here, it is undisputed that Ms. Lieberman acquired title to the Subject Property on June 25, 2014 as a tenant by the entirety.

    What follows the creation of this tenancy, however, is less clear. A tenancy by the entirety may be destroyed in six ways in North Carolina. There must be a voluntary sale or conveyance; a voluntary partition between the husband and the wife; the involuntary transfer of title of property held by spouses; a conveyance of one spouse's interest to the other spouse of this interest; a divorce; or a judgment of forfeiture under the North Carolina RICO Statute. N.C. GEN. STAT. ANN. Ch. 41 Art. 5. § 41-63; *see also Est. of Nelson ex rel. Brewer v. Nelson*, 633 S.E.2d 124, 129 (N.C. Ct. App. 2006), *aff'd*, S.E.2d 587 (N.C. 2007).

    Defendant signed a plea agreement in April 2015 allegedly without Ms. Lieberman's knowledge where Defendant disclaimed all his interest in the Subject

Property. (ECF No. 27 at 1). Several months afterwards in December 2015, Defendant executed a quitclaim deed purporting to transfer all his interest in the Subject Property to his wife. (ECF No. 128 at Att. 1). In addition to these circumstances, the Court believes that Ms. Lieberman and Defendant may be divorced at the present time.[1] Although neither party has raised the issue of divorce as a dispute of material fact, it is well established that it is premature to grant summary judgment where there are factual disputes. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 433 n.10 (3d Cir. 1996). Therefore, summary judgment on what Ms. Lieberman's tenancy status in the Subject Property is inappropriate.

Notwithstanding this fact, the Court believes that Ms. Lieberman's tenancy status—whether it be as a tenant by the entirety or otherwise—only satisfies the preliminary matter of whether Ms. Lieberman has standing to bring an ancillary petition under 21 U.S.C. § 853. Regardless as to the current status of her tenancy, Ms. Lieberman possesses a property interest in the Subject Property under North Carolina law that she is fighting to keep. However, this property interest under state law does not in itself allow Ms. Lieberman to prevail at the ancillary hearing since Ms. Lieberman must show that under federal law, she has a federal right to the

---

[1] Specifically, in her initial petition, Ms. Lieberman wrote the following, leading the Court to believe that Ms. Lieberman may have since obtained a divorce. Ms. Lieberman wrote: "Although we are still legally married due to currently not having the financial ability to file for divorce . . . ." (ECF No. 27 at 3).

Subject Property under the test set forth in 21 U.S.C. § 853. Specifically, at the ancillary hearing, Ms. Lieberman must prove by the preponderance of the evidence that her interest "was superior to any right, title or interest of the [D]efendant at the time of the commission of the acts which gave rise to the forfeiture of the property" under 21 U.S.C. § 853(n)(6)(A) or that she was a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B).

Under 21 U.S.C. § 853(6)(A), the Court looks first to the law of the jurisdiction that created the property right to determine whether the petitioner had a valid interest created and then to federal law to determine the same. *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007). Ms. Lieberman's tenancy status—regardless as to whether she is a tenant by the entirety or a tenant in common in the Subject Property or otherwise—only satisfies the first part of this showing: that under the law of North Carolina, she has an interest in the Subject Property and therefore, she has standing to raise the claims litigated in the ancillary hearing. *Id.* at 1129–30. However, Ms. Lieberman must show more at the ancillary hearing. Specifically, Ms. Lieberman must show that she had title to the forfeited Subject Property that vested prior to the time of the criminal act. *Id.*; *see also United States v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005). Alternately, Ms. Lieberman may prevail at the ancillary hearing if she was a bona fide purchaser for value—even if this purchase occurred after the Government's interest had vested. 21 U.S.C. §

853(n)(6)(B). Accordingly, Ms. Lieberman's tenancy status under North Carolina law *does not* in itself create a loophole in 21 U.S.C. § 853 that would allow her to skip the steps set forth in 21 U.S.C. § 853(n).

The Court finds that Ms. Lieberman's tenancy status does not alter the facts that must be shown at the hearing. Specifically, what must be shown is that either: Ms. Lieberman had a federal property interest in the Subject Property within the meaning of 21 U.S.C. § 853(n)(6)(A) and that that right was superior to any right of the Defendant at the time of the commission of the crime which gave rise to the forfeiture of the Subject Property *or* that Ms. Lieberman was a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B).

An appropriate order follows.

# ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, the arguments presented at oral argument, and for good cause shown, and for all the foregoing reasons,

**IT IS** on this **21st** day of **December, 2023**,

**ORDERED** that the Government's Motion for Partial Summary Judgment (ECF No. 130) is **DENIED** with respect to a ruling on Petitioner Dalana Lieberman's tenancy status; and

**ORDERED** that the Government's Motion for Partial Summary Judgment (ECF No. 130) is **GRANTED** in that the Court finds that Ms. Lieberman's tenancy status does not supersede the Government's interest in the Subject Property as a matter of law.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.